IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 28, 2015

## WILMARCUS H. MARTIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 101977     Steven W. Sword, Judge**

**No. E2014-02009-CCA-R3-PC-FILED-MAY 15, 2015**

The Petitioner, Wilmarcus H. Martin, appeals from the denial of his petition for post-conviction relief, wherein he challenged his guilty-pleaded conviction for cocaine possession with intent to sell within 1,000 feet of a park. On appeal, the Petitioner contends that he received the ineffective assistance of counsel, leading to an involuntary plea, because trial counsel told him incorrectly that his release eligibility would be changed from 100% to 85% by the Tennessee Department of Correction ("TDOC") once he began serving his sentence, and because trial counsel failed to reserve a challenge to the search as a part of the guilty plea. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the Appellant, Wilmarcus H. Martin.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Charme P. Allen, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION
FACTUAL BACKGROUND

On December 14, 2012, the Petitioner pled guilty in case number 100546 to possession with the intent to sell 0.5 grams or more of a Schedule II controlled substance within 1,000 feet of a park, a Class B felony. See Tenn. Code Ann. §§ 39-17-417, -432. It was further announced at the plea submission hearing, "He has four different cases on today. Three of them are on for sentencing, and one was on for status." Thereafter, the State

provided the following factual basis for the Petitioner's plea to the drug charge in case number 100546:

> Proof in this case would show that on April 5th of this year about two o'clock in the morning officers with the Knoxville Police Department were conducting a walking patrol in Ridgebrook Apartments which is located—the area of this event was located within [1,000] feet of Malcolm Martin Park. They observed [the Petitioner] sitting in the driver's seat of a Lexus parked in a handicapped space in front of 2108 Ridgebrook Lane.
>
> They approached the [Petitioner], spoke with him, [and] noticed an odor of alcoholic beverage coming from the vehicle. He also advised that he was not a resident of that complex and did not have identification on him.
>
> Further investigation using a narcotic K-9 resulted in a positive alert on that vehicle for the presence of narcotics. A subsequent search pursuant to that sniff revealed a black pouch in the center console that contained approximately 24.7 grams of [a] white rock-like substance that field-tested positive for cocaine and was confirmed to be cocaine from the lab. That amount was consistent with possession for resale. [The Petitioner] also had $295 in denominations consistent with the sale of narcotics.

In outlining the terms of the agreement, the assistant public defender stated, "[W]e've reached an agreement in [case 100546] whereby he'll be serving . . . some time, and part of that agreement is that time will be concurrent with some of the sentence—two of the sentences [case numbers 98745 and 99030] that were on for sentencing today." She continued, "And one of them has to be consecutive [case number 99962].[1] We kind of recognize that [the Community Alternatives to Prison Program] did not want to supervise [the Petitioner] and kind of saw the writing on the wall there that he was probably going to be sentenced to serve on those six years—that total six-year sentence but have worked out this agreement that should take care of everything today."

In exchange for his plea to Count 1 in case number 100546, the Petitioner received a sentence of eight years with 100% service percentage, to be served consecutively to a two-year sentence in case number 99962 with 30% Range I offender service percentage, resulting in a total effective sentence of ten years. Two-year sentences were also imposed for case numbers 98745 and 99030, and those sentences were to be served concurrently with the eight-year sentence in case number 100546. A second count of the indictment in case

---

[1] It appears from the transcript that consecutive service of this sentence was mandatory because the Petitioner was on bond at the time he committed some or all of the offenses in the remaining cases. No factual bases for these additional cases were provided at the hearing.

number 100546 was dismissed.[2] Thus, four separate cases were disposed of by the plea deal. Furthermore, the assistant district attorney commented directly on the Petitioner's release eligibility for the drug charge: "Recommended sentence is eight years, the minimum sentence with drug-free zone release eligibility. That—meaning that full eight years would have to be served."

In response to questioning by the trial court, the twenty-six-year-old Petitioner stated that he had obtained his General Equivalency Diploma, that he could read and write, and that he was not under the influence of any substances that would impair his cognitive skills. The Petitioner confirmed that the announcement of the assistant district attorney coincided with his understanding of the terms of the agreement. The trial court then specifically inquired regarding the Petitioner's release eligibility for his cocaine possession conviction, "In that case you'll receive a minimum sentence of eight years. Since it's within that distance of a park, it's a sentence that you have to serve [100%]. There's no eligibility on that one." The Petitioner replied that he understood that detail.

The trial court then reviewed with the Petitioner the various trial rights he was waiving by pleading guilty, including his right to an attorney at all stages in the proceedings, his right to plead not guilty and proceed to a jury trial where the State would be required to prove all elements of the offense beyond a reasonable doubt, his right to confront the witnesses against him and to present witnesses in his defense, and his right to testify at trial before a jury of his peers. The Petitioner confirmed for the trial court that he was pleading guilty voluntarily, that his attorney had reviewed the guilty plea agreement paperwork with him, that his signature appeared on that agreement, and that he understood all of the rights listed in that agreement. The Petitioner further stated that he was satisfied with trial counsel's representation and that he did not have any questions about the plea agreement. He indicated that he understood that by pleading guilty, he was "agreeing" to the facts as stipulated by the assistant district attorney. Reservation of any certified question of law was never discussed during the Petitioner's guilty plea. In fact, the Petitioner was asked, "You understand when you waive your right to a trial by jury you also waive your right to an appeal? So this will be the final hearing today on whether or not you're guilty of this offense and what the sentence will be." The Petitioner again indicated such an understanding.

On July 26, 2013, the Petitioner filed a timely pro se petition for post-conviction relief. Counsel was appointed, and an amended petition was filed, wherein the Petitioner

---

[2] We note that neither a copy of the indictment, the plea petition paperwork, nor the multiple judgment forms are included in the record on appeal. These were not made exhibits to the post-conviction hearing, and counsel noted that the post-conviction court could "take judicial notice of the documents that are in the technical record of the underlying case." Although we are not provided with any of these documents on appeal, we do not find it necessary to supplement the record in order to dispose of the Petitioner's claims.

asserted that his plea in case number 100546 was entered unknowingly and involuntarily due to the ineffective assistance of trial counsel. Specifically, the Petitioner claimed that "trial counsel did not explain to him the difference between standard offender sentencing and sentencing for a drug-free school zone violation[,]" and that "had he properly understood that he would have to serve 100% of eight years before being release eligible for the offense to which he pled guilty, he would have rejected the plea agreement and declined to waive his rights to a jury trial."

At the subsequent post-conviction hearing, Petitioner's counsel announced that the Petitioner wanted to add an additional basis for relief—"He also claims that he believed he would still have a motion to suppress even after pleading guilty in that case and did not understand why he wouldn't have a further proceeding with a motion to suppress evidence from the drug case." Petitioner's counsel conceded that the signed plea agreement document advised the Petitioner "that he was waiving his right to appeal[,]" resulting in a final disposition of the case, and "that that drug case would be served at [100%]—the eight years at [100%]." Petitioner's counsel also noted the references in the transcript of the guilty plea submission hearing where the Petitioner was advised of the 100%-service requirement and confirmed his understanding of that detail. Only the Petitioner testified.

The Petitioner confirmed that he entered in a plea agreement that disposed of several cases at his December 2012 guilty plea submission hearing, which included dismissal of one charge, although he claimed that he was wrongly informed about one case. Furthermore, he testified that trial counsel explained to him that he was pleading to a Class B felony on the drug charge for sale within 1,000 feet of a park, rather than as a Class A felony for sale within 1,000 feet of a school zone, his original charge. He agreed that trial counsel told him that "the park zone would affect release eligibility" requiring him to serve 100% of his sentence. However, the Petitioner averred that trial counsel also said to him that "most of the time when you go to prison it—with [100%], it goes down to 85[%]." When specifically asked if trial counsel told him that he "would only have to serve 85[%]," he replied, "She said I'll be—I have [100%], but when I go to TDOC, they'll make it a 85[%]." He also agreed that the trial court told him that service of his sentence was to be at 100% and that no mention of 85% service was contained in the plea paperwork.

According to the Petitioner, he was first offered a plea deal of twelve years at 30%. He said that he took the eight-year deal at 100% rather than the first offer of twelve years at 30% because "she said it would turn to a 85[%]" once he was in TDOC's custody. But for his misunderstanding of the release eligibility, he claimed he would have taken the twelve-year deal instead because he would "have been home sooner."

The Petitioner testified that trial counsel discussed the facts of the case with him, including "what happened there when the police showed up," and "eventually [when] they

-4-

searched the vehicle and found the crack cocaine inside the vehicle[.]" He said that they talked about whether the search was lawful and whether there was any basis to seek suppression of the crack cocaine found inside the car. However, the police cars were not equipped with cameras according to the Petitioner; consequently, he asked trial counsel to get the video recordings from the apartment complex, "so they could see that [the police] searched the car before they called the dog." The Petitioner stated that trial counsel complied with his request and attempted to get the video recording from the apartment complex, but she was unsuccessful because it had been erased. He confirmed that he told the police officers he was not a resident of the complex and that he did not have any identification on him at that time.

Next, the Petitioner averred that, as a part of his plea deal, he "wanted to reserve the right . . . to challenge the law to make sure . . . it was legal to search [him]." According to the Petitioner, he discussed with trial counsel reserving a certified question of law challenging the search: "She said something about that would have been a 37 or something." He confirmed that no mention was made by trial counsel or by him of any such reservation at the guilty plea submission hearing, but "in [his] mind, [he was] thinking [he] could still question the search" based upon statements from trial counsel. He also agreed that the plea paperwork specifically said that there was no appeal of the case. Lastly, he confirmed that no motion to suppress hearing was ever held in this case.

The Petitioner was specifically asked if he would have known that he was going to be unable to challenge the suppression issue any further would he then have rejected the agreement and proceeded to trial. His response was equivocal:

> I would have—I would have had to think—think more on it than what I—like I—like I said, I didn't really read it. I just went on what she said, it would have been 85. So all I wanted to do was reserve the right to question the law, make sure everything was legal when it was done.

When asked again, he replied, "I don't know what I would have done." Post-conviction counsel then explained to the Petitioner the remedy for his grounds for relief, i.e., that the post-conviction court would have to set aside the plea deal in its entirety and that he might not receive any further offers from the State and would have to proceed to trial. Knowing that, the Petitioner was asked if he still wanted his agreement set aside, and he said, "No. I'm asking the [c]ourt is it possible for me to reserve the right to question the law. That's all. That's what I want to know." When asked again if he wanted his guilty pleas vacated, he replied,

> No. What I was trying to do is ask could—could—would I—what I agreed with my attorney to—my right to question the law. You know, I

didn't—I didn't know it would take all my—take the plea back.  You know, I'm doing my time now, but I still want to—I still want to know is it all legal to where—to what happened.

The Petitioner continued with similar ambiguous responses about his request for relief.

On cross-examination, the Petitioner confirmed that he was familiar with the court system, having "some issues in juvenile court[,]" as well as having a simple possession charge for which he was granted judicial diversion, and several guilty-pleaded convictions for leaving the scene of an accident, reckless driving, and drug possession.  He remembered having attorneys to represent him on the felony drug possession cases and going through the same process on those convictions as he went through here.  He agreed that he understood what happened in those cases.

Thereafter, the post-conviction court denied relief, concluding the Petitioner had failed to establish his claim of ineffective assistance of counsel and that, therefore, his plea was entered voluntarily.  This timely appeal followed.

ANALYSIS

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence.  Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn.  2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings.  Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001).  Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court.  Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness.  Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).  In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  The Strickland standard has been applied to the right to counsel under article I,

section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The Petitioner's argument on appeal is based solely upon his testimony at the post-conviction hearing. First, he "suggests that his testimony under oath at the post-conviction hearing that his attorney had assured him that 100% would mean 85% once he got to the TDOC was sufficiently credible to overcome the assumption that he was aware he would have to serve 100% of the sentence." In support of this contention, he notes that "the common and regular application of sentence reduction credits" once an inmate is in the TDOC's custody "could easily" have led to his "believing that the release eligibility percentage announced in court and on a judgment does not necessarily, and often does not mean that an inmate will serve exactly that percentage before becoming release eligible." He further states, "Though the Petitioner was unclear at the post-conviction hearing about whether he actually wanted his guilty plea to be vacated, he was clear that he wanted to contest the legality of the search of his vehicle." The Petitioner then requests that his plea be vacated for these reasons.

The post-conviction court rejected the Petitioner's allegations, first concluding that the Petitioner had failed to establish any deficient performance by trial counsel. The post-conviction court reasoned,

> If the Petitioner's attorney had in fact advised him that the eight[-]year sentence would be served at 85% rather than 100%, then this advice would have been incorrect. Although the court only heard from the Petitioner and not his previous counsel, the court cannot find based on the proof presented clear and convincing evidence that the Petitioner was wrongfully advised. The nature of his plea agreement was explained by both the [assistant district attorney] and the judge at multiple points during the plea colloquy. The court finds it difficult to believe that the Petitioner would not have once inquired about an 85% service rate had he been so advised.
>
> Furthermore, the absence of any mention of a challenge to the search during the plea hearing, or any question by the Petitioner on this issue, indicates to the post-conviction court that there was no such agreement.

The post-conviction court went on to address the prejudice prong of the Petitioner's ineffective assistance claim:

In the present case, the Petitioner testified repeatedly that he did not want to go to trial in this case. Prior to entry of the guilty plea, he engaged in ongoing plea negotiations and accepted one of the offers presented to him. He acknowledged on the stand during the post-conviction hearing that he rejected a longer sentence with a lower rate of service during the negotiations. In addition, he presented no proof that had he challenged the search in question that he would have prevailed. Thus, the Petitioner has not established that he was prejudiced by any deficient performance by his attorney.

Referencing the guilty plea proceedings, the post-conviction court did not find the Petitioner's testimony credible that he was informed that service of his sentence would be reduced to 85% once in the custody of the TDOC or that he believed he would still be able to raise a search issue following his guilty plea. We find nothing in the record to preponderate against these findings. First, we note that the Petitioner's argument that he would have been "home sooner" at 85% of eight years rather than at 30% of twelve years is mathematically flawed. Moreover, it is not necessary, and may not always be possible, for trial counsel to testify to refute a petitioner's post-conviction claims. As previously noted, credibility determinations are best made by the lower court, and we will not disturb such determinations on appeal. State v. Young, 196 S.W.3d 85, 107 (Tenn. 2006).

We also agree that the Petitioner has failed to establish any prejudice. Although he argues on appeal for this court to vacate his plea, he did testify repeatedly, as noted by the post-conviction court, that he did not want his guilty plea set aside. Moreover, we note that the Petitioner was familiar with the criminal justice system, having previously entered into guilty pleas in several different cases, and that the guilty plea agreement in question disposed of four separate cases, not just the drug charge. It is clear from the record that the Petitioner entered knowing and voluntary pleas of guilt, fully aware of his various alternatives. Accordingly, we conclude that the post-conviction court did not err by denying the petition for post-conviction relief.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-8-